UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON KRUL,

        Plaintiff,                                          Hon. Gordon J. Quist

v.                                                             Case No. 1:10-CV-384

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security granting in part and denying in part Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 31 years of age as of the date of the ALJ's decision. (Tr. 21, 119). He possesses a General Equivalency Diploma (GED) and worked previously as a carpenter. (Tr. 146, 161).

Plaintiff applied for benefits on May 2, 2002, alleging that he had been disabled since March 17, 2002, due to injuries suffered in a dirt-bike accident. (Tr. 119-21). Plaintiff's application was granted. Following a December 13, 2004 review of Plaintiff's condition, the Commissioner found that Plaintiff continued to be disabled. (Tr. 14-15). Following a July 24, 2008 review of Plaintiff's condition, however, the Commissioner determined that Plaintiff's disability ended as of September 1, 2007. (Tr. 14).

Plaintiff appealed this determination and requested a hearing before an Administrative Law Judge (ALJ). On February 11, 2009, Plaintiff appeared before ALJ Douglas Johnson, with testimony offered by Plaintiff and vocational expert, David Holwerda. (Tr. 354-93). In a written decision dated July 9, 2009, the ALJ determined that Plaintiff was disabled from March 17, 2002, through September 1, 2007, but not thereafter. (Tr. 14-21). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 4-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **RELEVANT MEDICAL HISTORY**

On March 17, 2002, Plaintiff "was involved in a dirt bike accident" in which he "hit [his] head on something hard." (Tr. 263-88). Plaintiff suffered a serious head injury for which he received rehabilitation services from Hope Network.[1] (Tr. 235-62).

Hope Network treatment notes dated March 20, 2003, indicate that Plaintiff was being treated for "personality change due to brain injury with special difficulties with anger management and impulsivity." (Tr. 262). It was further noted that these impairments were "comorbid with mood disorder associated with brain injury with mixed bipolar features and attention deficit syndrome due to traumatic brain injury." (Tr. 262). The doctor also noted that these difficulties "are all superimposed on pre-existing subtle attentional difficulties and marijuana abuse," as well as "subtle left hemiplegia." (Tr. 262). The doctor reported that "over the past month [Plaintiff] has continued to do very well" with "no symptoms of significant mood disorder at this point." (Tr. 262). Plaintiff was prescribed Concerta and Oxcarbazepine. (Tr. 262).

On or about June 24, 2003, Plaintiff began receiving job coaching rehabilitation services through Hope Network. (Tr. 260-61). On June 24, 2003, Plaintiff began working at Blue Sky Builders as a "carpenter's assistant." (Tr. 260). In this capacity, Plaintiff's duties consisted of "basic carpentry, plumbing, siding, and electrical work and also site clean up." (Tr. 261). Plaintiff exhibited "a positive attitude at work," but "was terminated on [September 26, 2003] for performance related issues." (Tr. 261). Specifically, Plaintiff was terminated because "he was not fast enough to do the job." (Tr. 259).

---

[1] The administrative record does not contain the medical records concerning Plaintiff's medical treatment immediately following his dirt bike accident.

On October 9, 2003, Plaintiff was examined by Dr. Kristopher Brenner. (Tr. 302-03). Plaintiff reported that he was experiencing "seasonal allergic rhinitis." (Tr. 302). The doctor noted that Plaintiff had "satisfactor[ily]" completed rehabilitation following his accident. (Tr. 302). Plaintiff reported that his medications were "vital in his retention of information and his concentration since his injury." (Tr. 302). Plaintiff reported that he was not experiencing any side effects as a result of his medications. (Tr. 302). Plaintiff was in no acute distress and the results of a physical examination were unremarkable. (Tr. 302-03). Specifically a neurological examination revealed no abnormalities or deficits. (Tr. 303). Plaintiff also moved "all extremities appropriately with 5/5 strength and no tremors" and his "sensation [was] normal to touch." (Tr. 303).

Hope Network treatment notes dated November 2003, indicate that Plaintiff acknowledged "that he has been drinking on a social basis" and "has been drunk approximately six times since his injury." (Tr. 256). Plaintiff was advised of the "risks of his consumption of alcohol after his brain injury" as well as the fact that his alcohol consumption was a violation of Hope Network policy. (Tr. 255-56).

Following a December 8, 2003 examination, Dr. Brenner reported that Plaintiff's condition was "stable." (Tr. 300-01).

On January 23, 2004, Plaintiff was hired by Katt Construction on a "full-time" basis for a construction/carpentry position. (Tr. 249-52). Plaintiff reported that he "loved" this job, but "was uncomfortable with working off the ground." (Tr. 250). Plaintiff's vocational specialist indicated that Plaintiff "was not" restricted from working at heights. (Tr. 250). Plaintiff "indicated that he was willing to work on the roof but he felt that he would be slow and that he would need to be taught the procedures of working on the roof." (Tr. 250). Plaintiff subsequently reported that

"he was not as fast as he once was regarding this type of work and that he may need to consider looking outside the construction field." (Tr. 250). On March 12, 2004, Katt Construction terminated Plaintiff's employment because he "was not fast enough, and was not picking up the job quickly enough." (Tr. 250). Following this occurrence, Plaintiff "stated that he would not look for any other construction/carpentry jobs for the time being." (Tr. 246).

On July 26, 2004, Plaintiff began working at Home Depot. (Tr. 242). Hope Network treatment notes dated August 2004, indicate that Plaintiff "is working independently and doing well." (Tr. 239). Home Depot reported "no concerns and indicate[d] that [Plaintiff] is doing a fine job." (Tr. 239). Plaintiff reported "that he enjoys the job and is enjoying working for Home Depot." (Tr. 239). Plaintiff was "working approximately 32 hours per week" for Home Depot in the hardware department. (Tr. 240-41).

On September 14, 2004, Plaintiff was examined by Dr. Brenner. (Tr. 297-98). The doctor reported that Concerta has "stabilized" Plaintiff's condition. (Tr. 297). Plaintiff was "in no acute distress" and the results of a physical examination were unremarkable. (Tr. 298). Plaintiff moved "all extremities appropriately with 5/5 strength." (Tr. 298). Plaintiff exhibited no evidence of tremors, sensory deficits, cerebellar signs or ataxia. (Tr. 298).

Hope Network treatment notes, dated October 31, 2004, indicate that Plaintiff "is working independently and doing well." (Tr. 212). It was noted that Plaintiff had met all the goals established for him in his attempt to "return to competitive employment." (Tr. 211-12). Specifically, Plaintiff met the following goals: (1) Plaintiff "will work all scheduled shifts and be prompt for his shifts;" (2) Plaintiff "will complete his job duties to the satisfaction of the employer;" and (3) Plaintiff "will complete all assigned tasks by the employer." (Tr. 212). Home Depot

reported that Plaintiff "is a motivated and willing employee with a very good attitude" who "is willing to complete any task that is requested of him." (Tr. 212). Plaintiff reported "that he wanted to return to work full-time in the carpentry or construction fields," but "would be willing to explore employment in other fields." (Tr. 211). In light of Plaintiff's progress and success, Hope Network discontinued its job coaching services. (Tr. 212).

On November 15, 2004, Plaintiff's girlfriend, Janell Armstrong, completed a report regarding Plaintiff's activities. (Tr. 122-30). Armstrong reported that Plaintiff works part time and also performs various "household chores" such as cleaning, laundry, washing dishes, and raking leaves. (Tr. 122-24). Armstrong reported that Plaintiff is able to prepare meals, shop, and care for his personal needs. (Tr. 123-25). Armstrong also reported that Plaintiff hunts, fishes, plays cards, watches television, and "hang[s] out" with friends. (Tr. 126).

On April 10, 2007, Janell Armstrong reported that on a "typical" day, Plaintiff washes dishes, vacuums, runs errands, performs "other housework," plays cards, watches television, works, and plays video games. (Tr. 149).

On July 16, 2007, Plaintiff participated in a consultive examination conducted by Psychologist Beth Clevenger Baxter, MA, LLP. (Tr. 263-66). Plaintiff reported that he was disabled due to "the after effects of trauma brain injury." (Tr. 263). Plaintiff reported that he presently was prescribed Concerta "for focusing and concentration." (Tr. 263). Plaintiff reported that this medication was "helping a lot" and that he "stays on task much better with the medication." (Tr. 263). Plaintiff reported that he was also prescribed Trileptal which "helps to maintain his mood." (Tr. 263). Plaintiff reported that he "has been seeing a family doctor once a month since April 2004." (Tr. 263). Plaintiff reported that he received speech therapy, physical therapy, and

occupational therapy for approximately one year following his motorbike accident, but has received no such services since. (Tr. 263). Plaintiff reported that he was "not seeing any other professionals to include doctors, psychologists, social workers, counselors, speech therapists, physical therapists, occupational therapists or tutors at the time." (Tr. 263).

Plaintiff reported that he was currently employed at Home Depot working "20 to 25 hours a week." (Tr. 264). Plaintiff reported that Home Depot "would give him more hours," but that "he does not want more hours." (Tr. 264). Plaintiff reported that "he does not work more hours because he does not need to." (Tr. 266). Specifically, Plaintiff stated, "me and my partnership is such that I don't need to work 40 hours a week." (Tr. 266).

Plaintiff reported that he "currently drinks one or two times a month" and "currently uses [marijuana] two to four times a month." (Tr. 264). Plaintiff reported that he is able to clean the house, shop, cook, wash laundry, drive, and perform gardening and yard work. (Tr. 264). Plaintiff reported that he also enjoys playing video games, playing cards, and golfing. (Tr. 264).

Plaintiff "evidenced good contact with reality, good motivation and good self esteem." (Tr. 264). He "presented with good hygiene and was dressed in stylish clothing." (Tr. 264). Plaintiff "displayed normal motor activity" and "no hyperactivity." (Tr. 264). He was "relaxed and pleasant with good focus" and exhibited "good insight into his own situation." (Tr. 264). His responses "were spontaneous and well organized" with "no articulation or pressured speech concerns noted." (Tr. 264-65). Plaintiff also exhibited no evidence of "cognitive disturbances." (Tr. 265). Plaintiff was diagnosed with: (1) history of traumatic brain injury; (2) mood disorder, secondary to traumatic brain injury, well controlled by medications; (3) attention deficit disorder, secondary to traumatic brain injury, well controlled by medications; and (4)

cannabis dependance in partial sustained remission. (Tr. 266). Plaintiff's GAF score was rated as 58.[2] (Tr. 266).

Contact notes dated August 13, 2007, indicate that on his present job Plaintiff "stocks items, helps customers, [and] is a good employee." (Tr. 178). Plaintiff had not presented any "disciplinary problems" and while Plaintiff "prefers not to drive a forklift...no special considerations are given to him." (Tr. 178).

On September 20, 2007, Plaintiff was examined by Dr. Brenner. (Tr. 282-83). Plaintiff "move[d] all extremities spontaneously and with normal strength." (Tr. 282). His "deep tendon reflexes [were] normal and symmetrical." (Tr. 282). Plaintiff's "sensation [was] intact to all modalities" and his "gait, coordination and balance [were] appropriate for age." (Tr. 282). The doctor noted that Plaintiff was normocephalic and exhibited no cardiovascular deficits or abnormalities. (Tr. 282-83).

## ANALYSIS OF THE ALJ'S DECISION

The Social Security Act provides that disability benefits may be terminated if "the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling." 42 U.S.C. § 423(f). Termination of benefits must be supported, however, by substantial evidence that (1) there has been medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (2) the individual is now able to engage in substantial gainful

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 58 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

9

activity.  *See* 42 U.S.C. § 423(f)(1)(A)-(B); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

The social security regulations articulate an eight-step sequential process by which determinations of continuing disability are made.  *See* 20 C.F.R. §§ 404.1594, 416.994.  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  The steps of this sequential process are as follows:

> (1) Is the individual engaging in substantial gainful activity;
>
> (2) Does the individual have an impairment or combination of impairments which meets or equals in severity an impairment identified in the Listing of Impairments;
>
> (3) Has the individual experienced a medical improvement;
>
> (4) Is the improvement related to the individual's ability to perform work (i.e., has there been an increase in the individual's residual functional capacity based on the impairment(s) present at the time of the most recent favorable medical determination);
>
> (5) If the individual has either not experienced a medical improvement or any such improvement is unrelated to his ability to perform work, do any of the exceptions to the medical improvement standard apply;
>
> (6) Does the individual suffer from a severe impairment or combination of impairments;
>
> (7) Can the individual perform his past relevant work;
>
> (8) Can the individual perform other work;[3]
>
> *Id.*

---

[3] While not expressly stated in the regulations, it is clear that "other" work refers to work which exists in significant numbers.  *See*, *e.g.*, *Mote v. Shalala*, 1995 WL 358636 at *12 (N.D.Ind., May 12, 1995).

Furthermore, when the Commissioner evaluates whether a claimant continues to qualify for benefits, the claimant is not entitled to a presumption of continuing disability. *See Cutlip*, 25 F.3d at 286. Rather, the decision whether to terminate benefits must "be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition." *Id.*

The ALJ determined that as of September 1, 2007, Plaintiff suffered from (1) mood disorder secondary to traumatic brain injury; (2) attention deficit hyperactivity disorder; and (3) right sided weakness secondary to traumatic brain injury, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 16-17). The ALJ further found that as of September 1, 2007, Plaintiff experienced a "medical improvement" in his condition. (Tr. 17-18). The ALJ found that Plaintiff's improvement was related to his ability to work as such resulted in an increase in his residual functional capacity. (Tr. 18). Specifically, the ALJ determined that as of September 1, 2007, Plaintiff retained the capacity to perform a limited range of light work. (Tr. 18). Based on the testimony of a vocational expert, the ALJ determined that as of September 1, 2007, there existed a significant number of jobs which Plaintiff could perform despite his limitations. (Tr. 20-21). Accordingly, the ALJ concluded that Plaintiff's disability ended as of September 1, 2007.

In this appeal, Plaintiff asserts no challenge to the ALJ's decision, but instead asserts only that he is entitled to a remand so that certain medical evidence, first submitted in this Court, can be considered by the Commissioner. As Plaintiff recognizes, this Court cannot consider any evidence that was not first presented to the ALJ. *See Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996); *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden of making these showings. *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

The evidence in question reveals the following. On November 7, 2009, Plaintiff participated in an MRI examination the results of which revealed findings "consistent with cystic encephalomalacia" and "mild cerebral atrophy." (Dkt. #9). On February 4, 2010, Plaintiff participated in a neuropsychological evaluation at Mary Free Bed Rehabilitation Hospital. (Dkt. #9, 11). Plaintiff's speech was "spontaneous" and "was not suggestive of symptoms of disturbed form or content of thought." The results of various tests indicated that while Plaintiff's abilities were within normal limits in certain areas, he "continues to have significant cognitive and behavioral deficits as a result of his traumatic brain injury." The examiner recommended to Plaintiff that he participate in outpatient psychotherapy. *Id.* On March 30, 2010, Plaintiff reported that he "feels over all better with all the therapy." (Dkt. #12).

On August 9, 2010, Carrie-Ann Strong, Ph.D. reported that Plaintiff experiences "residual brain impairment." (Dkt. #14). Strong reported that Plaintiff "cannot sustain his attention for prolonged periods of time, and works more slowly than the average person." Strong concluded that Plaintiff "will never be capable of returning to full time work." *Id.*

The evidence in question post-dates the ALJ's decision by several months and post-dates by several years the date on which the ALJ found that Plaintiff's disability ceased. Thus, the evidence in question is "new" for purposes of evaluating a request for a sentence six remand. *See Templeton v. Commissioner of Social Security*, 215 Fed. Appx. 458, 463 (6th Cir., Feb. 8, 2007) ("evidence is new only if it was not in existence or was not available prior to the ALJ's decision"). However, Plaintiff has failed to establish that this evidence is material or that there exists good cause for his failure to procure such prior to the ALJ's decision.

To satisfy the "good cause" requirement, Plaintiff must demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Hollon*, 447 F.3d at 485. With respect to good cause, Plaintiff argues that he was not referred to "competent physicians" until after the administrative hearing before the ALJ. The Court notes, however, that Plaintiff was represented by counsel at the administrative hearing. In fact, counsel was appointed for Plaintiff more than three months before the administrative hearing. (Tr. 33). At the administrative hearing, counsel asserted that the record was complete and that there was no additional evidence for the ALJ to consider. (Tr. 358). The ALJ nevertheless kept the administrative record open for 14 days following the hearing to allow Plaintiff to submit additional medical evidence. (Tr. 230).

The Court finds that Plaintiff has failed to establish good cause for his failure to procure the evidence in question prior to the administrative hearing, especially with respect to the November 7, 2009 MRI examination on which Plaintiff places so much reliance. Plaintiff offers no reasonable justification as to why he was unable to obtain an MRI prior to the administrative hearing. Plaintiff likewise fails to offer a reasonable justification as to why he was unable to

participate in a neuropsychological evaluation or psychotherapy until after the administrative hearing. Thus, the Court finds that Plaintiff has failed to satisfy the "good cause" requirement. However, even if the Court were to find that Plaintiff had established good cause, the result is the same as the evidence in question does not satisfy the materiality requirement.

This new evidence simply indicates that Plaintiff suffers from the residual effects of a traumatic brain injury, something which the ALJ expressly recognized and sufficiently accounted for in his RFC determination. While this new evidence *may* support the argument that Plaintiff, as of 2010, was limited to an extent beyond that recognized by the ALJ, this evidence does not call into question the ALJ's conclusion that as of September 1, 2007, Plaintiff's condition had improved such that he was then capable of performing work that existed in significant numbers. The new evidence in question concerns Plaintiff's condition almost three years after the date the ALJ found Plaintiff's disability ceased. The evidence in question fails to establish that Plaintiff's condition from November 2009 through August 2010 is reflective of Plaintiff's condition as of September 1, 2007.

Anticipating this observation, Plaintiff argues that "it is NOT possible for Mr. Krul to get 'better' th[e]n fall 'worse.'" (Dkt. #24). The Court disagrees. Contrary to Plaintiff's assertion, it is certainly possible for a person's condition to improve only to subsequently deteriorate. Recovery from traumatic injury does not necessarily always advance in a straight line and a patient may experience gains or improvements in functioning only to later suffer setbacks or a diminution in functioning. Plaintiff's argument that whatever limitations he experienced in 2010 must have been in effect as of 2007 is not supported by the medical evidence in this case and, moreover, is contradicted by common sense and experience.

As Defendant correctly observes, the new evidence that Plaintiff has submitted to this Court is "significantly at odds with" the evidence that was presented to the ALJ. As discussed above, the evidence before the ALJ revealed that Plaintiff worked at Home Depot for several years without difficulty. Plaintiff reported that the only reason he did not work more than 32 hours per week is that the situation with his girlfriend was such that he did not need to work full-time.

At most, the new evidence that Plaintiff has submitted establishes only that his condition deteriorated long after the time period in question. Such evidence is immaterial and does not support remand. *See, e.g., Ferguson v. Commissioner of Social Security*, 628 F.3d 269, 277-78 (6th Cir. 2010) (medical evidence dated "over a year" after the ALJ's decision merely "evidences a subsequent deterioration in condition" and "was properly deemed immaterial because it does not necessarily speak to [the claimant's] condition at the relevant time"); *Jones v. Commissioner of Social Security*, 336 F.3d 469, 478 (6th Cir. 2003) ("evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial"); *Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 685 (6th Cir. 1992) (same).

In sum, it is not reasonable to assert that consideration of this material by the ALJ would have led to a different result. Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  August 12, 2011                                          /s/ Ellen S. Carmody
                                                                              ELLEN S. CARMODY
                                                                              United States Magistrate Judge